## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX COUNTY, ss.                    SUPERIOR COURT DEPARTMENT

A123 SYSTEMS LLC,

       Plaintiff,

       v.

APPLE INC., MUJEEB IJAZ, DON DAFOE,
MICHAEL ERICKSON, DEPENG WANG and
INDRAJEET THORAT

       Defendants.

Civil Action No. **15-482 H**

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

FEB - 6 2015

CLERK

### VERIFIED COMPLAINT

Plaintiff A123 Systems LLC ("*A123*"), by and through undersigned counsel, for its Verified Complaint against defendants Mujeeb Ijaz, Don Dafoe, Michael Erickson, Dapeng Wang, Indrajeet Thorat (the "*Individual Defendants*"), and Apple Inc. ("*Apple*") (collectively, "*Defendants*"), alleges as follows:

### PARTIES

1.    A123 is a Delaware limited liability company with a principal place of business in Michigan and offices in Middlesex County, Massachusetts. A123 is in the business of designing and manufacturing advanced lithium-ion battery technology and energy storage systems for commercial and industrial applications, including automotive.

2.    Apple is a California corporation that designs and sells, among other things, consumer electronics.

3.      Upon information and belief, defendant Ijaz is domiciled in Michigan. Defendant Ijaz is a former employee of A123 and a current employee of Apple.

4.      Defendant Dafoe is a former employee of A123 and a current employee of Apple in California.

5.      Defendant Erickson is a former employee of A123 and a current employee of Apple in California.

6.      Defendant Wang is a soon-to-be-former employee of A123 and a soon-to-be employee of Apple in California.  Defendant Wang's last day of employment with A123 is Friday, February 6, and he has told A123 that he is going to be employed by Apple in California.

7.      Defendant Thorat is a former employee of A123 and a current employee of Apple in California.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to M.G.L. c. 212, §§ 3 and 4 and c. 214, § 1.

9.      This Court has personal jurisdiction over Defendants pursuant to M.G.L. c. 223A, § 3.  Further, this Court has personal jurisdiction over the Individual Defendants because they agreed in their respective agreements with A123 to submit to the exclusive jurisdiction and venue of this Court.

10.     Venue is proper pursuant to M.G.L. c. 223, § 1.

## BACKGROUND FACTS

### The Individual Defendants' Roles at A123.

11.     The Individual Defendants formerly worked in A123's System Venture Technologies division, located in Waltham, Massachusetts. That division conducts research and development related to A123's lithium-ion battery technology business.

12.     While employed at A123, the Individual Defendants were responsible for, among other things, developing and testing new battery technology and products and validating and testing existing battery technology and products.

13.     Defendants Erickson, Wang, and Thorat are PhD scientists and while employed by A123 were each in charge of separate projects related to A123's business.

14.     Defendants Dafoe, Erickson, Wang, and Thorat reported directly to defendant Ijaz. Defendant Ijaz was in charge of A123's Waltham, Massachusetts office and, therefore, acted as the head of A123's System Venture Technologies division.

### The Individual Defendants' Non-Compete, Non-Solicit, and Non-Disclosure Obligations.

15.     The Individual Defendants were in constant contact with and utilized A123's confidential and proprietary information as part of their employment. In recognition of this, and as a prerequisite to their employment with A123, the Individual Defendants each executed an Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement for the benefit of A123. Copies of defendant Ijaz's, defendant Dafoe's, defendant Erickson's, defendant Wang's, and defendant Thorat's executed Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements are attached hereto as Exhibits A, B, C, D, and E, respectively.

16.    The Individual Defendants' Non-Disclosure, Non-Competition and Non-Solicitation Agreements were intended to provide A123 with reasonable protections concerning its confidential and proprietary information and to otherwise protect A123's legitimate business interests.

17.    Specifically, the Individual Defendants agreed that:

> all information, whether or not in writing, of a private, secret or confidential nature concerning the Company's [A123] business, business relationships or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. ... [the Individual Defendants] will not disclose any Proprietary Information to any person or entity other than employees of the Company or use the same for any purposes (other than in the performance of [their] duties as an employee of the Company) without written approval by an officer of the Company, either during or after [their] employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by [the Individual Defendants].

Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶1.

18.    The Individual Defendants had access to and utilized A123's Proprietary Information in connection with their employment. Such Proprietary Information is not public knowledge, is safeguarded by A123, and none of the Individual Defendants are authorized to use or disclose any Proprietary Information.

19.    The Individual Defendants further agreed to refrain from competing with A123 in its battery business for a reasonable time period following the termination of their employment. Specifically, they agreed that, for a period of one year after the termination of their employment with A123, they would not:

> Engage in any business or enterprise ... that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed, sold or provided, or planned to be developed, manufactured, marketed, sold or provided, by the Company while the [Individual Defendants were] employed by the Company; or

Either alone or in association with others, sell or attempt to sell to any person or entity that was, or to whom the Company had made or received a proposal to become, a customer or client of the Company at any time during the term of the [Individual Defendants'] employment with the Company, any products or services which are competitive with any products or services developed, manufactured, marketed, sold or provided by the Company.

Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶4(a), (c).

20.    The Individual Defendants further agreed to refrain from soliciting A123's employees. Specifically, they agreed that, for a period of one year after the termination of their employment with A123, they would not:

Either alone or in association with others (i) solicit, or permit any organization directly or indirectly controlled by the Employee to solicit, any employee of the Company to leave the employ of the Company, or (ii) solicit for employment, hire or engage as an independent contractor, or permit any organization directly or indirectly controlled by the Employee to solicit for employment, hire or engage as an independent contractor, any person who was employed by the Company at the time of the termination or cessation of the [Individual Defendants'] employment with the Company.

Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶4(b).

21.    The Individual Defendants specifically acknowledged that the above-quoted restrictions on their post-employment activity were necessary for the protection of A123, that the breach of any of those restrictions would cause irreparable harm to A123, and that A123 would be entitled to an injunction restraining any such breach. Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶9(g).

22.    The Individual Defendants each consented to the applicability of Massachusetts laws and the jurisdiction of the Massachusetts courts. Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶9(h).

*Apple's Entry into A123's Business and the Poaching of A123's Employees.*

23.     Upon information and belief, Apple is currently developing a large scale battery division to compete in the very same field as A123.

24.     In connection with that development, beginning in or around June of 2014, defendant Apple embarked on an aggressive campaign to poach employees of A123 and to otherwise raid A123's business.

25.     To date, Apple has poached the five (5) Individual Defendants from A123.

26.     On information and belief, Apple has targeted companies in addition to A123 to hire employees with experience in A123's battery business, including LG, Samsung, Panasonic, Toshiba, and Johnson Controls.

27.     With the exception of defendant Ijaz, all of the Individual Defendants terminated their employment with A123 and began working for Apple within the last month. Defendant Ijaz ceased working with A123 and began working for Apple in June of 2014.

28.     Upon information and belief, and in direct violation of his Non-Disclosure, Non-Competition and Non-Solicitation Agreement, defendant Ijaz has solicited one or more of the other Individual Defendants to leave their employment with A123 and begin working with Apple.

29.     A123's belief is informed by, among other things, defendant Dafoe having involved defendant Ijaz in his hiring communications with Apple's agents. Attached hereto as Exhibit F is an e-mail message from defendant Dafoe with Apple's hiring personnel in which defendant Ijaz is included.

30.     This e-mail confirms that defendant Ijaz either directly or indirectly solicited or was otherwise wrongfully involved in the hiring of defendant Dafoe, in violation of defendant Ijaz's Non-Disclosure, Non-Competition and Non-Solicitation Agreement.

31.     Upon information and belief, this e-mail confirms that defendant Dafoe is working as a direct report to defendant Ijaz, as was the case when both were employed by A123.

32.     Upon information and belief, in connection with their employment at Apple, defendants Dafoe, Erickson, Wang, and Thorat report directly to defendant Ijaz, as was the case when the Individual Defendants were employed by A123.

33.     Upon information and belief, defendant Ijaz and/or defendant Dafoe improperly solicited defendants Erickson, Wang, and Thorat to leave A123 and join Apple, in violation of their Non-Disclosure, Non-Competition and Non-Solicitation Agreements.

34.     In the wake of defendants Erickson, Wang, and Thorat's departures, the projects that each was individually and principally responsible for have been effectively shut down for lack of PhD employees to replace these defendants.

35.     Furthermore, the departures of the Individual Defendants means that A123 has lost the substantial investment it made in each of these employees, and is now forced to scramble to find replacements at substantial cost to A123.

36.     Upon further information and belief, all of the Individual Defendants are working in a field of battery science, technology, and/or products that is substantially similar if not identical to the field they worked in at A123.

37.   A123's belief is informed by, among other things, defendant Ijaz's contact and solicitation of one of A123's external collaborators – SiNode Systems, on behalf of Apple.

38.   SiNode Systems, like A123, is in the business of researching, developing, and marketing lithium-ion battery technology.

39.   Defendant Ijaz worked with SiNode Systems on behalf of A123 in connection with its battery business.

40.   A123 has learned from SiNode Systems that defendant Ijaz solicited it on behalf of Apple.

41.   Defendant Ijaz's solicitation of SiNode Systems confirms that his work on behalf of Apple is at least substantially similar (if not identical) to his work at A123.

42.   Apple's belief that the Individual Defendants are working in a field of battery science, technology, and/or products that is substantially similar if not identical to the field they worked in at A123 is further informed Apple's job description for an "Engineering Program Manager, Battery Technology." This job description generally describes the type of work that the Individual Defendants performed while employed by A123. A copy of this job description is attached hereto as Exhibit G.

43.   Further, this job description was discovered on defendant Thorat's work computer at A123 following his departure, further confirming that the Individual Defendants  are working in a field of battery science, technology, and/or products that is substantially similar if not identical to the field they worked in at A123.

**Apple Disregards the Individual Defendants' Non-Disclosure, Non-Competition and Non-Solicitation Agreements.**

44.    On December 22, 2014, A123 notified Apple in writing of defendant Ijaz's Non-Disclosure, Non-Competition and Non-Solicitation Agreement and A123's concerns that defendant Ijaz was violating that agreement by, among other things, soliciting employees and working in a similar if not identical field to the one he was involved in at A123. A copy of correspondence in this regard is attached hereto as Exhibit H.

45.    A123 also expressed concerns that defendant Ijaz would inevitably disclose A123's Proprietary Information in connection with his employment with Apple.

46.    Also on December 22, 2014, A123 wrote to defendant Ijaz directly to remind him of his obligations under his Non-Disclosure, Non-Competition and Non-Solicitation Agreement and to request that he provide A123 with assurances that he has and will continue to adhere to that agreement. A copy of this correspondence is attached hereto as Exhibit I. Defendant Ijaz never responded or provided the requested assurances.

47.    Apple responded to A123's correspondence in writing on January 12, 2015, but failed to provide any assurance that defendant Ijaz has not and will not disclose or utilize A123's Proprietary Information, improperly solicit A123 employees, or improperly compete with A123. A copy of this correspondence is attached hereto as Exhibit J.

48.    A123 responded by letter dated January 16, 2015 reiterating its concerns to Apple and its belief that defendant Ijaz and defendant Dafoe were violating their Non-Disclosure, Non-Competition and Non-Solicitation Agreements. A copy of correspondence in this regard is attached hereto as Exhibit K.

49.     A123 also advised Apple that its continued employment of former A123 employees may constitute, among other things, unlawful interference with A123's contractual rights under the Non-Disclosure, Non-Competition and Non-Solicitation Agreements.

50.     A123 demanded that Apple advise it as to what defendants Ijaz and Dafoe were working on at Apple and whether or not said work was similar to the work they performed on behalf of A123.

51.     A123 did not receive a response to its January 16th correspondence.

52.     Both before and after A123's contact with Apple, Apple has openly disregarded A123's concerns and its rights under the Individual Defendants' Non-Disclosure, Non-Competition and Non-Solicitation Agreements by employing defendants Ijaz and Dafoe.

53.     Following A123's contact with Apple, Apple further disregarded A123's rights by hiring defendants Erickson, Wang, and Thorat, despite knowledge of these defendants' Non-Disclosure, Non-Competition and Non-Solicitation Agreements.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT – VIOLATION OF NON-COMPETE COVENANT
### (INDIVIDUAL DEFENDANTS)

54.     A123 repeats and realleges the allegations of paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55.     At all material times, the Individual Defendants were and continue to be subject to the non-competition provision of their Non-Disclosure, Non-Competition and Non-Solicitation Agreements.  Pursuant to that provision, Individual Defendants agreed that for a period of 12 months following the termination of their employment

with A123, they would not engage in any business or enterprise that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service marketing, sold or provided by A123.

56.     This provision of the Non-Disclosure, Non-Competition and Non-Solicitation Agreements is reasonable under the circumstances and is necessary to protect the legitimate business interests of A123.

57.     In their employment with Apple, the Individual Defendants have breached their Non-Disclosure, Non-Competition and Non-Solicitation Agreements.

58.     As a result of the foregoing, A123 has suffered and will continue to suffer irreparable harm and monetary damages.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT – VIOLATION OF EMPLOYEE NON-SOLICITATION COVENANT (INDIVIDUAL DEFENDANTS)**

59.     A123 repeats and realleges the allegations of paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60.     By contacting A123 employees, directly or indirectly, while such employees were still employed by A123, for the purpose of inducing them to cease their employment with A123 and/or become employees of and perform services for Apple, Individual Defendants have breached the employee non-solicitation provisions of their Non-Disclosure, Non-Competition and Non-Solicitation Agreements.

61.     A123 carefully safeguards its relationships with its employees in order to protect the continuity of its operations, its ability to provide service to its clients, its

goodwill and its competitive position in the industry. A123 has also promulgated various policies and procedures designed to further protect its confidential information.

62.    In signing the Non-Disclosure, Non-Competition and Non-Solicitation Agreements, each of the Individual Defendants expressly admitted that any breach of its terms could cause A123 irreparable harm and further agreed that A123 would be entitled to seek injunctive relief and monetary damages to enforce it.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT – VIOLATION OF NON-DISCLOSURE COVENANT
### (INDIVIDUAL DEFENDANTS)

63.    A123 repeats and realleges the allegations of paragraphs 1 through 62 of the Complaint as if fully set forth herein.

64.    By copying and retaining A123 information, documents and files governed by the non-disclosure provisions of their Non-Disclosure, Non-Competition and Non-Solicitation Agreements and disclosing that information and those documents and files outside of A123, the Individual Defendants have each breached their Non-Disclosure, Non-Competition and Non-Solicitation Agreements.

65.    A123 carefully safeguards its confidential information in order to protect its relationships with its clients and those clients' confidential information as well as to protect its competitive position in the industry. A123 has also promulgated various policies and procedures designed to further protect its confidential information

66.    In signing their Non-Disclosure, Non-Competition and Non-Solicitation Agreements, each of the Individual Defendants expressly admitted that any breach of its terms could cause A123 irreparable harm and further agreed that A123 would be entitled to seek injunctive relief and monetary damages to enforce it.

## FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE (DEFENDANTS IJAZ AND APPLE)

67.     A123 repeats and realleges the allegations of paragraphs 1 through 66 of the Complaint as if fully set forth herein.

68.     A123 had a clear and evident business relationship with the Individual Defendants.  They all worked in A123's Venture Technologies division, which conducts research and development related to A123's lithium-ion battery technology business.

69.     A123's business relationship with Individual Respondents was obvious and well-known to Apple.  Regardless of this well-known fact, Apple sought to "raid" A123's Venture Technologies division by hiring the Individual Defendants.

70.     Apple knew of the economic benefit that A123 received from the business activities of the Individual Defendants and sought to take those benefits by openly raiding A123's Venture Technologies division.

71.     Apple improperly and tortiously interfered in the business relationship between A123 and the Individual Defendants.

72.     After his departure from A123, Ijaz participated in Apple's improper and tortious interference in the business relationship between A123 and the other Individual Defendants.

73.     A123's loss of economic advantage resulted from Apple's raiding of the Venture Technologies division.

## FIFTH CAUSE OF ACTION
## UNFAIR COMPETITION/MASS GEN. LAWS 93A (ALL DEFENDANTS)

74.     A123 repeats and realleges the allegations of paragraphs 1 through 73 of the Complaint as if fully set forth herein.

75.     Defendants are "person[s]" and engage in "trade or commerce" within the meaning of M.G.L. c. 93A, § 1.

76.     Defendants' actions in recruiting employees from A123's Venture Technologies division are unfair, unethical, unscrupulous, and caused substantial injury.

77.     Defendants interfered with A123's ability to conduct its business and ability to have enduring relationships with its employees.

78.     Defendants' actions are unfair and deceptive and constitute knowing and willful violations of M.G.L. c. 93A, § 11.

79.     Defendants' violations of c. 93A have caused A123 substantial injury.

## SIXTH CAUSE OF ACTION
### MISAPPROPRIATION OF TRADE SECRETS/MASS GEN. LAWS 93 (ALL DEFENDANTS)

80.     A123 repeats and realleges the allegations of paragraphs 1 through 79 of the Complaint as if fully set forth herein.

81.     Upon information and belief, Defendants have stolen, copied, and carried away confidential and proprietary information and trade secrets of A123 with the intent to disclose it and convert it to their own use.

82.     Upon information and belief, Defendants have misappropriated confidential and proprietary information and trade secrets belonging to A123 by improper means and in violation of a confidential relationship with A123.

83.     Defendants' misappropriation of A123's confidential and proprietary information and trade secrets as set forth above constitutes a violation of M.G.L. ch. 93, §§ 42 and 42A.

84.     As a result of Defendants' actions set forth above, A123 has suffered and continues to suffer substantial, immediate and irreparable harm and damages.  A123 is entitled to actual and compensatory damages as well as up to double damages for Defendants' willful conduct and equitable relief.

## SEVENTH CAUSE OF ACTION
### RAIDING (APPLE)

85.     A123 repeats and realleges the allegations of paragraphs 1 through 84 of the Complaint as if fully set forth herein.

86.     Apple willfully, maliciously, and improperly raided the Venture Technology divisions of A123 by enticing the Individual Defendants to resign from A123 and join Apple.

87.     As a result of Apple's raiding, A123's operations have been impaired and it has lost profits.

88.     A123 suffered a severe economic impact as a result of Apple's raiding.

89.     The evidence of raiding in this matter is incontrovertible, given the timing and the number of employees who left within short succession.

90.     As a result of Apple's raiding, A123 is entitled to profits that A123 could reasonably have expected to make from the Individual Defendant's business activities during the time they remained employed by A123.

WHEREFORE, A123 respectfully requests that this Court:

1.      enter judgment for A123 and against Defendants on all Counts of this Complaint;

2.      enjoin Individual Defendants, for one-year from the date of such order, from participating, directly or indirectly, on their own behalf or as an employee of any business entity, in any capacity, in any business or activity which is in direct or indirect competition with A123, which intends to compete directly or indirectly with A123 or which otherwise provides any products or services similar to any products or services provided or proposed to be offered by A123;

3.      enjoin Individual Defendants from disclosing or using A123's Proprietary Information, as defined in their Non-Disclosure, Non-Competition and Non-Solicitation Agreements, in any way except for the benefit of A123;

4.      enjoin Individual Defendants, for one-year from the date of such order, from soliciting employees to leave A123, in violation of their Non-Disclosure, Non-Competition and Non-Solicitation Agreements;

5.      enjoin Apple from hiring additional employees from A123's Venture Technologies division;

6.      award A123 monetary damages, in an amount to be proved at trial, for the economic injury it has sustained as a consequence of Defendants' conduct; and

7.      award A123 its costs and attorney fees incurred in connection with this action, and such other and further relief as the Court deems just and proper.

## VERIFICATION

I, Patrick Hurley, depose and say that I am the Chief Technology Officer for plaintiff A123

Systems LLC's System Venture Technologies division, that I have read the foregoing

Verified Complaint and that the statements of fact contained therein are true, except for those

statements made on information and belief, and, as to those, I believe them to be true.  This

statement is made under the pains and penalties of perjury.

PATRICK HURLEY

A123 SYSTEMS LLC

By its attorneys,

Michael L. Rosen (BBO No. 559954)
mrosen@foleyhoag.com
Lyndsey M. Kruzer (BBO No. 675797)
lkruzer@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
Tel:  617.832.1000
Fax: 617.832.7000

/s/ Robert S. Gilmore
Robert S. Gilmore
(to be admitted pro hac vice)
rsg@kjk.com
Robert J. Bowes
(to be admitted pro hac vice)
rjb@kjk.com
Kohrman Jackson & Krantz P.L.L.
20th Floor, One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114
216-696-8700

Dated:  February 6, 2015

Exhibit A

<u>INVENTION, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION
AGREEMENT</u>

This Agreement is made between A123Systems, Inc., a Delaware corporation
(hereinafter referred to collectively with its subsidiaries as the "Company"), and **Mujeeb Ijaz**
(the "Employee").

In consideration of the employment or the continued employment of the Employee by the
Company, the Company and the Employee agree as follows:

1.   <u>Proprietary Information</u>.

(a)   The Employee agrees that all information, whether or not in writing, of a
private, secret or confidential nature concerning the Company's business, business relationships
or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property
of the Company. By way of illustration, but not limitation, Proprietary Information may include
inventions, products, processes, methods, techniques, formulas, compositions, projects,
developments, plans, research data, financial data, personnel data, computer programs, customer
and supplier lists, and contacts at or knowledge of customers or prospective customers of the
Company. The Employee will not disclose any Proprietary Information to any person or entity
other than employees of the Company or use the same for any purposes (other than in the
performance of his/her duties as an employee of the Company) without written approval by an
officer of the Company, either during or after his/her employment with the Company, unless and
until such Proprietary Information has become public knowledge without fault by the Employee.

(b)   The Employee agrees that all files, letters, memoranda, reports, records,
data, sketches, drawings, laboratory notebooks, program listings, or other written, photographic,
or other tangible material containing Proprietary Information, whether created by the Employee
or others, which shall come into his/her custody or possession, shall be and are the exclusive
property of the Company to be used by the Employee only in the performance of his/her duties
for the Company. All such materials or copies thereof and all tangible property of the Company
in the custody or possession of the Employee shall be delivered to the Company, upon the earlier
of (i) a request by the Company or (ii) termination of his/her employment. After such delivery,
the Employee shall not retain any such materials or copies thereof or any such tangible property.

(c)   The Employee agrees that his/her obligation not to disclose or to use
information and materials of the types set forth in paragraphs (a) and (b) above, and his/her
obligation to return materials and tangible property, set forth in paragraph (b) above, also extends
to such types of information, materials and tangible property of customers of the Company or
suppliers to the Company or other third parties who may have disclosed or entrusted the same to
the Company or to the Employee.

2.   <u>Developments</u>.

(a)   The Employee will make full and prompt disclosure to the Company of all
inventions, improvements, discoveries, methods, developments, software, and works of
authorship, whether patentable or not, which are created, made, conceived or reduced to practice
by him/her or under his/her direction or jointly with others during his/her employment by the

Company, whether or not during normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "Developments").

    (b)  The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all his/her right, title and interest in and to all Developments and all related patents, patent applications, copyrights and copyright applications. However, this paragraph 2(b) shall not apply to Developments which do not relate to the present or planned business or research and development of the Company and which are made and conceived by the Employee not during normal working hours, not on the Company's premises and not using the Company's tools, devices, equipment or Proprietary Information. The Employee understands that, to the extent this Agreement shall be construed in accordance with the laws of any state which precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this paragraph 2(b) shall be interpreted not to apply to any invention which a court rules and/or the Company agrees falls within such classes. The Employee also hereby waives all claims to moral rights in any Developments.

    (c)  The Employee agrees to cooperate fully with the Company, both during and after his/her employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments. The Employee shall sign all papers, including, without limitation, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights, and powers of attorney, which the Company may deem necessary or desirable in order to protect its rights and interests in any Development. The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as his/her agent and attorney-in-fact to execute any such papers on his/her behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Development, under the conditions described in this sentence.

    3.  <u>Company Property</u>. The Employee agrees that, during the term of his employment, he shall not make, use or permit to be used any Company Property otherwise than for the benefit of the Company. The term "Company Property" shall include all notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, software code, data, computers, cellular telephones, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in his possession, custody or control. The Employee further agrees that he shall not, after the termination of his employment, use or permit others to use any such Company Property. The Employee acknowledges and agrees that all Company Property shall be and remain the sole and exclusive property of the Company. Immediately upon termination of his employment the Employee shall deliver all Company Property in his possession, and all copies thereof, to the Company.

- 2 -

4.     <u>Non-Competition and Non-Solicitation</u>.  While the Employee is employed by the Company and for a period of one year after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:

(a)     Engage in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed, sold or provided, or planned to be developed, manufactured, marketed, sold or provided, by the Company while the Employee was employed by the Company; or

(b)     Either alone or in association with others (i) solicit, or permit any organization directly or indirectly controlled by the Employee to solicit, any employee of the Company to leave the employ of the Company, or (ii) solicit for employment, hire or engage as an independent contractor, or permit any organization directly or indirectly controlled by the Employee to solicit for employment, hire or engage as an independent contractor, any person who was employed by the Company at the time of the termination or cessation of the Employee's employment with the Company; <u>provided</u>, that this clause (ii) shall not apply to any individual whose employment with the Company has been terminated for a period of six months or longer.

(c)     Either alone or in association with others, sell or attempt to sell to any person or entity that was, or to whom the Company had made or received a proposal to become, a customer or client of the Company at any time during the term of the Employee's employment with the Company, any products or services which are competitive with any products or services developed, manufactured, marketed, sold or provided by the Company.

5.     <u>United States Government Obligations</u>.

The Employee acknowledges that the Company from time to time may have agreements with other persons or with the United States Government, or agencies thereof, which impose obligations or restrictions on the Company regarding inventions made during the course of work under such agreements or regarding the confidential nature of such work.  The Employee agrees to be bound by all such obligations and restrictions which are made known to the Employee and to take all action necessary to discharge the obligations of the Company under such agreements.

6.     <u>Other Agreements</u>.

The Employee hereby represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with the Company, to refrain from competing, directly or indirectly, with the business of such previous employer or any other party or to refrain from soliciting employees, customers or suppliers of such previous employer or other party.  The Employee further represents that his/her performance of all the terms of this

- 3 -

Agreement and the performance of his/her duties as an employee of the Company do not and will not breach any agreement with any prior employer or other party to which the Employee is a party (including without limitation any nondisclosure or non-competition agreement), and that the Employee will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

7.   No Employment Contract.

The Employee acknowledges that this Agreement does not constitute a contract of employment, does not imply that the Company will continue his/her employment for any period of time and does not change the at-will nature of his/her employment.

8.   The Employee represents and warrants that the knowledge, skills and abilities he possesses at the time of commencement of employment hereunder are sufficient to permit him, in the event of termination of his employment hereunder, to earn a livelihood satisfactory to himself without violating any provision of Sections 1, 2, 3 or 4 hereof, for example, by using such knowledge, skills and abilities, or some of them, in the service of a non-competitor.

9.   Miscellaneous.

(a)   If any restriction set forth in Section 4 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

(b)   The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(c)   This Agreement supersedes all prior agreements, written or oral, between the Employee and the Company relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company. The Employee agrees that any change or changes in his/her duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

(d)   This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which, or into which, the Company may be merged or which may succeed to the Company's assets or business, provided, however, that the obligations of the Employee are personal shall not be assigned by him or her.

(e)   No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

- 4 -

(f)     The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

(g)     The restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable for such purpose. The Employee agrees that any breach of this Agreement is likely to cause the Company substantial and irrevocable damage which is difficult to measure. Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies which may be available, shall have the right to obtain an injunction from a court restraining such a breach or threatened breach and the right to specific performance of the provisions of this Agreement and the Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

(h)     This Agreement is governed by and will be construed as a sealed instrument under and in accordance with the laws of the Commonwealth of Massachusetts (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the Commonwealth of Massachusetts (or, if appropriate, a federal court located within Massachusetts), and the Company and the Employee each consents to the jurisdiction of such a court.

(i)     This Agreement may be amended or modified only by a written instrument executed by both the Company and the Employee.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.

By: _____

Date:  7 - 18 - 08                        Mujeeb Ijaz


A123SYSTEMS, INC.

By:_____
Date:_____            David P. Vieau
                                        President & CEO

- 5 -

Exhibit B

<u>INVENTION, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION
AGREEMENT</u>

This Agreement is made between Wanxiang Clean Energy USA Acquisition LLC (which may change its name to A123 Systems, LLC) (hereinafter referred to collectively with its subsidiaries as the "Company"), and Dapeng Wang (the "Employee").

In consideration of the employment or the continued employment of the Employee by the Company, the Company and the Employee agree as follows:

1.   <u>Proprietary Information.</u>

(a)   The Employee agrees that all information, whether or not in writing, of a private, secret or confidential nature concerning the Company's business, business relationships or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. By way of illustration, but not limitation, Proprietary Information may include inventions, products, processes, methods, techniques, formulas, compositions, projects, developments, plans, research data, financial data, personnel data, computer programs, customer and supplier lists, and contacts at or knowledge of customers or prospective customers of the Company. The Employee will not disclose any Proprietary Information to any person or entity other than employees of the Company or use the same for any purposes (other than in the performance of his/her duties as an employee of the Company) without written approval by an officer of the Company, either during or after his/her employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by the Employee.

(b)   The Employee agrees that all files, letters, memoranda, reports, records, data, sketches, drawings, laboratory notebooks, program listings, or other written, photographic, or other tangible material containing Proprietary Information, whether created by the Employee or others, which shall come into his/her custody or possession, shall be and are the exclusive property of the Company to be used by the Employee only in the performance of his/her duties for the Company. All such materials or copies thereof and all tangible property of the Company in the custody or possession of the Employee shall be delivered to the Company, upon the earlier of (i) a request by the Company or (ii) termination of his/her employment. After such delivery, the Employee shall not retain any such materials or copies thereof or any such tangible property.

(c)   The Employee agrees that his/her obligation not to disclose or to use information and materials of the types set forth in paragraphs (a) and (b) above, and his/her obligation to return materials and tangible property, set forth in paragraph (b) above, also extends to such types of information, materials and tangible property of customers of the Company or suppliers to the Company or other third parties who may have disclosed or entrusted the same to the Company or to the Employee.

2.   <u>Developments.</u>

(a)   The Employee will make full and prompt disclosure to the Company of all inventions, improvements, discoveries, methods, developments, software, and works of authorship, whether patentable or not, which are created, made, conceived or reduced to practice by him/her or under his/her direction or jointly with others during his/her employment by the Company

A123 Confidential

WALTHAM 25876v1

Company, whether or not during normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "Developments").

(b)     The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all his/her right, title and interest in and to all Developments and all related patents, patent applications, copyrights and copyright applications. However, this paragraph 2(b) shall not apply to Developments which do not relate to the present or planned business or research and development of the Company and which are made and conceived by the Employee not during normal working hours, not on the Company's premises and not using the Company's tools, devices, equipment or Proprietary Information. The Employee understands that, to the extent this Agreement shall be construed in accordance with the laws of any state which precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this paragraph 2(b) shall be interpreted not to apply to any invention which a court rules and/or the Company agrees falls within such classes. The Employee also hereby waives all claims to moral rights in any Developments.

(c)     The Employee agrees to cooperate fully with the Company, both during and after his/her employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments. The Employee shall sign all papers, including, without limitation, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights, and powers of attorney, which the Company may deem necessary or desirable in order to protect its rights and interests in any Development. The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as his/her agent and attorney-in-fact to execute any such papers on his/her behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Development, under the conditions described in this sentence.

3.     <u>Company Property</u>.  The Employee agrees that, during the term of his employment, he shall not make, use or permit to be used any Company Property otherwise than for the benefit of the Company.  The term "Company Property" shall include all notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, software code, data, computers, cellular telephones, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in his possession, custody or control.  The Employee further agrees that he shall not, after the termination of his employment, use or permit others to use any such Company Property. The Employee acknowledges and agrees that all Company Property shall be and remain the sole and exclusive property of the Company.  Immediately upon termination of his employment the Employee shall deliver all Company Property in his possession, and all copies thereof, to the Company.

4.     Non-Competition and Non-Solicitation.  While the Employee is employed by the Company and for a period of two (2) years after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:

(a)     Engage in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed, sold or provided, or planned to be developed, manufactured, marketed, sold or provided, by the Company while the Employee was employed by the Company; or

(b)     Either alone or in association with others (i) solicit, or permit any organization directly or indirectly controlled by the Employee to solicit, any employee of the Company to leave the employ of the Company, or (ii) solicit for employment, hire or engage as an independent contractor, or permit any organization directly or indirectly controlled by the Employee to solicit for employment, hire or engage as an independent contractor, any person who was employed by the Company at the time of the termination or cessation of the Employee's employment with the Company; provided, that this clause (ii) shall not apply to any individual whose employment with the Company has been terminated for a period of six months or longer.

(c)     Either alone or in association with others, sell or attempt to sell to any person or entity that was, or to whom the Company had made or received a proposal to become, a customer or client of the Company at any time during the term of the Employee's employment with the Company, any products or services which are competitive with any products or services developed, manufactured, marketed, sold or provided by the Company.

5.     United States Government Obligations.

The Employee acknowledges that the Company from time to time may have agreements with other persons or with the United States Government, or agencies thereof, which impose obligations or restrictions on the Company regarding inventions made during the course of work under such agreements or regarding the confidential nature of such work.  The Employee agrees to be bound by all such obligations and restrictions which are made known to the Employee and to take all action necessary to discharge the obligations of the Company under such agreements.

6.     Other Agreements.

The Employee hereby represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with the Company, to refrain from competing, directly or indirectly, with the business of such previous employer or any other party or to refrain from soliciting employees, customers or suppliers of such previous employer or other party.  The Employee further represents that his/her performance of all the terms of this

Agreement and the performance of his/her duties as an employee of the Company do not and will not breach any agreement with any prior employer or other party to which the Employee is a party (including without limitation any nondisclosure or non-competition agreement), and that the Employee will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

7.    No Employment Contract.

The Employee acknowledges that this Agreement does not constitute a contract of employment, does not imply that the Company will continue his/her employment for any period of time and does not change the at-will nature of his/her employment.

8.    The Employee represents and warrants that the knowledge, skills and abilities he possesses at the time of commencement of employment hereunder are sufficient to permit him, in the event of termination of his employment hereunder, to earn a livelihood satisfactory to himself without violating any provision of Sections 1, 2, 3 or 4 hereof, for example, by using such knowledge, skills and abilities, or some of them, in the service of a non-competitor.

9.    Miscellaneous.

(a)    If any restriction set forth in Section 4 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

(b)    The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(c)    This Agreement supersedes all prior agreements, written or oral, between the Employee and the Company relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company. The Employee agrees that any change or changes in his/her duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

(d)    This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which, or into which, the Company may be merged or which may succeed to the Company's assets or business, provided, however, that the obligations of the Employee are personal shall not be assigned by him or her.

(e)    No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any occasion.

(f)     The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

(g)     The restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable for such purpose.  The Employee agrees that any breach of this Agreement is likely to cause the Company substantial and irrevocable damage which is difficult to measure. Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies which may be available, shall have the right to obtain an injunction from a court restraining such a breach or threatened breach and the right to specific performance of the provisions of this Agreement and the Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

(h)     This Agreement is governed by and will be construed as a sealed instrument under and in accordance with the laws of the Commonwealth of Massachusetts (without reference to the conflicts of laws provisions thereof).  Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the Commonwealth of Massachusetts (or, if appropriate, a federal court located within Massachusetts), and the Company and the Employee each consents to the jurisdiction of such a court.

(i)     This Agreement may be amended or modified only by a written instrument executed by both the Company and the Employee.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.


Date:  12 / 18 / 2013                    By: _____

                                         Dapeng Wang


Date: _____

                                         Gang (Daniel) Li
                                         Vice President
                                         Wanxiang Clean Energy USA

5

Exhibit C