## INVENTION, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Agreement is made between A123Systems, Inc., a Delaware corporation (hereinafter referred to collectively with its subsidiaries as the "Company"), and Don Dafoe (the "Employee").

In consideration of the employment or the continued employment of the Employee by the Company, the Company and the Employee agree as follows:

1.     Proprietary Information.

(a)     The Employee agrees that all information, whether or not in writing, of a private, secret or confidential nature concerning the Company's business, business relationships or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. By way of illustration, but not limitation, Proprietary Information may include inventions, products, processes, methods, techniques, formulas, compositions, projects, developments, plans, research data, financial data, personnel data, computer programs, customer and supplier lists, and contacts at or knowledge of customers or prospective customers of the Company. The Employee will not disclose any Proprietary Information to any person or entity other than employees of the Company or use the same for any purposes (other than in the performance of his/her duties as an employee of the Company) without written approval by an officer of the Company, either during or after his/her employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by the Employee.

(b)     The Employee agrees that all files, letters, memoranda, reports, records, data, sketches, drawings, laboratory notebooks, program listings, or other written, photographic, or other tangible material containing Proprietary Information, whether created by the Employee or others, which shall come into his/her custody or possession, shall be and are the exclusive property of the Company to be used by the Employee only in the performance of his/her duties for the Company. All such materials or copies thereof and all tangible property of the Company in the custody or possession of the Employee shall be delivered to the Company, upon the earlier of (i) a request by the Company or (ii) termination of his/her employment. After such delivery, the Employee shall not retain any such materials or copies thereof or any such tangible property.

(c)     The Employee agrees that his/her obligation not to disclose or to use information and materials of the types set forth in paragraphs (a) and (b) above, and his/her obligation to return materials and tangible property, set forth in paragraph (b) above, also extends to such types of information, materials and tangible property of customers of the Company or suppliers to the Company or other third parties who may have disclosed or entrusted the same to the Company or to the Employee.

2.     Developments.

(a)     The Employee will make full and prompt disclosure to the Company of all inventions, improvements, discoveries, methods, developments, software, and works of authorship, whether patentable or not, which are created, made, conceived or reduced to practice by him/her or under his/her direction or jointly with others during his/her employment by the

Company, whether or not during normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "Developments").

(b)      The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all his/her right, title and interest in and to all Developments and all related patents, patent applications, copyrights and copyright applications. However, this paragraph 2(b) shall not apply to Developments which do not relate to the present or planned business or research and development of the Company and which are made and conceived by the Employee not during normal working hours, not on the Company's premises and not using the Company's tools, devices, equipment or Proprietary Information. The Employee understands that, to the extent this Agreement shall be construed in accordance with the laws of any state which precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this paragraph 2(b) shall be interpreted not to apply to any invention which a court rules and/or the Company agrees falls within such classes. The Employee also hereby waives all claims to moral rights in any Developments.

(c)      The Employee agrees to cooperate fully with the Company, both during and after his/her employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments. The Employee shall sign all papers, including, without limitation, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights, and powers of attorney, which the Company may deem necessary or desirable in order to protect its rights and interests in any Development. The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as his/her agent and attorney-in-fact to execute any such papers on his/her behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Development, under the conditions described in this sentence.

3.    Company Property. The Employee agrees that, during the term of his employment, he shall not make, use or permit to be used any Company Property otherwise than for the benefit of the Company. The term "Company Property" shall include all notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, software code, data, computers, cellular telephones, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in his possession, custody or control. The Employee further agrees that he shall not, after the termination of his employment, use or permit others to use any such Company Property. The Employee acknowledges and agrees that all Company Property shall be and remain the sole and exclusive property of the Company. Immediately upon termination of his employment the Employee shall deliver all Company Property in his possession, and all copies thereof, to the Company.

4.    <u>Non-Competition and Non-Solicitation</u>.  While the Employee is employed by the Company and for a period of one year after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:

(a)    Engage in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed, sold or provided, or planned to be developed, manufactured, marketed, sold or provided, by the Company while the Employee was employed by the Company; or

(b)    Either alone or in association with others (i) solicit, or permit any organization directly or indirectly controlled by the Employee to solicit, any employee of the Company to leave the employ of the Company, or (ii) solicit for employment, hire or engage as an independent contractor, or permit any organization directly or indirectly controlled by the Employee to solicit for employment, hire or engage as an independent contractor, any person who was employed by the Company at the time of the termination or cessation of the Employee's employment with the Company; <u>provided</u>, that this clause (ii) shall not apply to any individual whose employment with the Company has been terminated for a period of six months or longer.

(c)    Either alone or in association with others, sell or attempt to sell to any person or entity that was, or to whom the Company had made or received a proposal to become, a customer or client of the Company at any time during the term of the Employee's employment with the Company, any products or services which are competitive with any products or services developed, manufactured, marketed, sold or provided by the Company.

5.    <u>United States Government Obligations</u>.

The Employee acknowledges that the Company from time to time may have agreements with other persons or with the United States Government, or agencies thereof, which impose obligations or restrictions on the Company regarding inventions made during the course of work under such agreements or regarding the confidential nature of such work.  The Employee agrees to be bound by all such obligations and restrictions which are made known to the Employee and to take all action necessary to discharge the obligations of the Company under such agreements.

6.    <u>Other Agreements</u>.

The Employee hereby represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with the Company, to refrain from competing, directly or indirectly, with the business of such previous employer or any other party or to refrain from soliciting employees, customers or suppliers of such previous employer or other party.  The Employee further represents that his/her performance of all the terms of this

- 3 -

Agreement and the performance of his/her duties as an employee of the Company do not and will not breach any agreement with any prior employer or other party to which the Employee is a party (including without limitation any nondisclosure or non-competition agreement), and that the Employee will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

7.      No Employment Contract.

The Employee acknowledges that this Agreement does not constitute a contract of employment, does not imply that the Company will continue his/her employment for any period of time and does not change the at-will nature of his/her employment.

8.      The Employee represents and warrants that the knowledge, skills and abilities he possesses at the time of commencement of employment hereunder are sufficient to permit him, in the event of termination of his employment hereunder, to earn a livelihood satisfactory to himself without violating any provision of Sections 1, 2, 3 or 4 hereof, for example, by using such knowledge, skills and abilities, or some of them, in the service of a non-competitor.

9.      Miscellaneous.

(a)      If any restriction set forth in Section 4 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

(b)      The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(c)      This Agreement supersedes all prior agreements, written or oral, between the Employee and the Company relating to the subject matter of this Agreement.  This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company.  The Employee agrees that any change or changes in his/her duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

(d)      This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which, or into which, the Company may be merged or which may succeed to the Company's assets or business, provided, however, that the obligations of the Employee are personal shall not be assigned by him or her.

(e)      No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right.  A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

(f)     The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

(g)     The restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable for such purpose. The Employee agrees that any breach of this Agreement is likely to cause the Company substantial and irrevocable damage which is difficult to measure. Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies which may be available, shall have the right to obtain an injunction from a court restraining such a breach or threatened breach and the right to specific performance of the provisions of this Agreement and the Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

(h)     This Agreement is governed by and will be construed as a sealed instrument under and in accordance with the laws of the Commonwealth of Massachusetts (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the Commonwealth of Massachusetts (or, if appropriate, a federal court located within Massachusetts), and the Company and the Employee each consents to the jurisdiction of such a court.

(i)     This Agreement may be amended or modified only by a written instrument executed by both the Company and the Employee.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.

Don Dafoe

By: _____

Date: _____JAN 10, 2005_____

A123 SYSTEMS, INC.

By: _____

David P. Vieau
President & CEO

Date: _____JAN 24, 2005_____

Exhibit D

INVENTION, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION
AGREEMENT

This Agreement is made between Wanxiang Clean Energy USA Acquisition LLC (which may change its name to A123 Systems, LLC) (hereinafter referred to collectively with its subsidiaries as the "Company"), and Michael Erickson (the "Employee").

In consideration of the employment or the continued employment of the Employee by the Company, the Company and the Employee agree as follows:

1.    Proprietary Information.

(a)    The Employee agrees that all information, whether or not in writing, of a private, secret or confidential nature concerning the Company's business, business relationships or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. By way of illustration, but not limitation, Proprietary Information may include inventions, products, processes, methods, techniques, formulas, compositions, projects, developments, plans, research data, financial data, personnel data, computer programs, customer and supplier lists, and contacts at or knowledge of customers or prospective customers of the Company. The Employee will not disclose any Proprietary Information to any person or entity other than employees of the Company or use the same for any purposes (other than in the performance of his/her duties as an employee of the Company) without written approval by an officer of the Company, either during or after his/her employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by the Employee.

(b)    The Employee agrees that all files, letters, memoranda, reports, records, data, sketches, drawings, laboratory notebooks, program listings, or other written, photographic, or other tangible material containing Proprietary Information, whether created by the Employee or others, which shall come into his/her custody or possession, shall be and are the exclusive property of the Company to be used by the Employee only in the performance of his/her duties for the Company. All such materials or copies thereof and all tangible property of the Company in the custody or possession of the Employee shall be delivered to the Company, upon the earlier of (i) a request by the Company or (ii) termination of his/her employment. After such delivery, the Employee shall not retain any such materials or copies thereof or any such tangible property.

(c)    The Employee agrees that his/her obligation not to disclose or to use information and materials of the types set forth in paragraphs (a) and (b) above, and his/her obligation to return materials and tangible property, set forth in paragraph (b) above, also extends to such types of information, materials and tangible property of customers of the Company or suppliers to the Company or other third parties who may have disclosed or entrusted the same to the Company or to the Employee.

2.    Developments.

(a)    The Employee will make full and prompt disclosure to the Company of all inventions, improvements, discoveries, methods, developments, software, and works of authorship, whether patentable or not, which are created, made, conceived or reduced to practice by him/her or under his/her direction or jointly with others during his/her employment by the
A123 Confidential

Company, whether or not during normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "Developments").

(b)     The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all his/her right, title and interest in and to all Developments and all related patents, patent applications, copyrights and copyright applications. However, this paragraph 2(b) shall not apply to Developments which do not relate to the present or planned business or research and development of the Company and which are made and conceived by the Employee not during normal working hours, not on the Company's premises and not using the Company's tools, devices, equipment or Proprietary Information. The Employee understands that, to the extent this Agreement shall be construed in accordance with the laws of any state which precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this paragraph 2(b) shall be interpreted not to apply to any invention which a court rules and/or the Company agrees falls within such classes. The Employee also hereby waives all claims to moral rights in any Developments.

(c)     The Employee agrees to cooperate fully with the Company, both during and after his/her employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments. The Employee shall sign all papers, including, without limitation, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights, and powers of attorney, which the Company may deem necessary or desirable in order to protect its rights and interests in any Development. The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as his/her agent and attorney-in-fact to execute any such papers on his/her behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Development, under the conditions described in this sentence.

3.     Company Property.  The Employee agrees that, during the term of his employment, he shall not make, use or permit to be used any Company Property otherwise than for the benefit of the Company.  The term "Company Property" shall include all notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, software code, data, computers, cellular telephones, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in his possession, custody or control.  The Employee further agrees that he shall not, after the termination of his employment, use or permit others to use any such Company Property. The Employee acknowledges and agrees that all Company Property shall be and remain the sole and exclusive property of the Company.  Immediately upon termination of his employment the Employee shall deliver all Company Property in his possession, and all copies thereof, to the Company.

4.      <u>Non-Competition and Non-Solicitation</u>.  While the Employee is employed by the Company and for a period of two (2) years after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:

(a)      Engage in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed, sold or provided, or planned to be developed, manufactured, marketed, sold or provided, by the Company while the Employee was employed by the Company; or

(b)      Either alone or in association with others (i) solicit, or permit any organization directly or indirectly controlled by the Employee to solicit, any employee of the Company to leave the employ of the Company, or (ii) solicit for employment, hire or engage as an independent contractor, or permit any organization directly or indirectly controlled by the Employee to solicit for employment, hire or engage as an independent contractor, any person who was employed by the Company at the time of the termination or cessation of the Employee's employment with the Company; <u>provided</u>, that this clause (ii) shall not apply to any individual whose employment with the Company has been terminated for a period of six months or longer.

(c)      Either alone or in association with others, sell or attempt to sell to any person or entity that was, or to whom the Company had made or received a proposal to become, a customer or client of the Company at any time during the term of the Employee's employment with the Company, any products or services which are competitive with any products or services developed, manufactured, marketed, sold or provided by the Company.

5.      <u>United States Government Obligations</u>.

The Employee acknowledges that the Company from time to time may have agreements with other persons or with the United States Government, or agencies thereof, which impose obligations or restrictions on the Company regarding inventions made during the course of work under such agreements or regarding the confidential nature of such work.  The Employee agrees to be bound by all such obligations and restrictions which are made known to the Employee and to take all action necessary to discharge the obligations of the Company under such agreements.

6.      <u>Other Agreements</u>.

The Employee hereby represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with the Company, to refrain from competing, directly or indirectly, with the business of such previous employer or any other party or to refrain from soliciting employees, customers or suppliers of such previous employer or other party.  The Employee further represents that his/her performance of all the terms of this

3

Agreement and the performance of his/her duties as an employee of the Company do not and will not breach any agreement with any prior employer or other party to which the Employee is a party (including without limitation any nondisclosure or non-competition agreement), and that the Employee will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

7.     No Employment Contract.

The Employee acknowledges that this Agreement does not constitute a contract of employment, does not imply that the Company will continue his/her employment for any period of time and does not change the at-will nature of his/her employment.

8.     The Employee represents and warrants that the knowledge, skills and abilities he possesses at the time of commencement of employment hereunder are sufficient to permit him, in the event of termination of his employment hereunder, to earn a livelihood satisfactory to himself without violating any provision of Sections 1, 2, 3 or 4 hereof, for example, by using such knowledge, skills and abilities, or some of them, in the service of a non-competitor.

9.     Miscellaneous.

(a)     If any restriction set forth in Section 4 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

(b)     The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(c)     This Agreement supersedes all prior agreements, written or oral, between the Employee and the Company relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company. The Employee agrees that any change or changes in his/her duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

(d)     This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which, or into which, the Company may be merged or which may succeed to the Company's assets or business, provided, however, that the obligations of the Employee are personal shall not be assigned by him or her.

(e)     No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

(f)     The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

(g)     The restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable for such purpose.  The Employee agrees that any breach of this Agreement is likely to cause the Company substantial and irrevocable damage which is difficult to measure.  Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies which may be available, shall have the right to obtain an injunction from a court restraining such a breach or threatened breach and the right to specific performance of the provisions of this Agreement and the Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

(h)     This Agreement is governed by and will be construed as a sealed instrument under and in accordance with the laws of the Commonwealth of Massachusetts (without reference to the conflicts of laws provisions thereof).  Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the Commonwealth of Massachusetts (or, if appropriate, a federal court located within Massachusetts), and the Company and the Employee each consents to the jurisdiction of such a court.

(i)     This Agreement may be amended or modified only by a written instrument executed by both the Company and the Employee.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.

Date:   6 - 12 - 2014                          By:   _____

                                              Michael Erickson


Date:   _____

                                              Gang (Daniel) Li
                                              Vice President
                                              Wanxiang Clean Energy USA

5

Exhibit E



## INVENTION, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Agreement is made between A123Systems, Inc., a Delaware corporation (hereinafter referred to collectively with its subsidiaries as the "Company"), and Indrajeet Thorat (the "Employee").

In consideration of the employment or the continued employment of the Employee by the Company, the Company and the Employee agree as follows:

1.    Proprietary Information.

(a)    The Employee agrees that all information, whether or not in writing, of a private, secret or confidential nature concerning the Company's business, business relationships or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. By way of illustration, but not limitation, Proprietary Information may include inventions, products, processes, methods, techniques, formulas, compositions, projects, developments, plans, research data, financial data, personnel data, computer programs, customer and supplier lists, and contacts at or knowledge of customers or prospective customers of the Company.  The Employee will not disclose any Proprietary Information to any person or entity other than employees of the Company or use the same for any purposes (other than in the performance of his/her duties as an employee of the Company) without written approval by an officer of the Company, either during or after his/her employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by the Employee.

(b)    The Employee agrees that all files, letters, memoranda, reports, records, data, sketches, drawings, laboratory notebooks, program listings, or other written, photographic, or other tangible material containing Proprietary Information, whether created by the Employee or others, which shall come into his/her custody or possession, shall be and are the exclusive property of the Company to be used by the Employee only in the performance of his/her duties for the Company.  All such materials or copies thereof and all tangible property of the Company in the custody or possession of the Employee shall be delivered to the Company, upon the earlier of (i) a request by the Company or (ii) termination of his/her employment.  After such delivery, the Employee shall not retain any such materials or copies thereof or any such tangible property.

(c)    The Employee agrees that his/her obligation not to disclose or to use information and materials of the types set forth in paragraphs (a) and (b) above, and his/her obligation to return materials and tangible property, set forth in paragraph (b) above, also extends to such types of information, materials and tangible property of customers of the Company or suppliers to the Company or other third parties who may have disclosed or entrusted the same to the Company or to the Employee.

2.    Developments.

(a)    The Employee will make full and prompt disclosure to the Company of all inventions, improvements, discoveries, methods, developments, software, and works of authorship, whether patentable or not, which are created, made, conceived or reduced to practice by him/her or under his/her direction or jointly with others during his/her employment by the Company, whether or not during

normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "Developments").

(b)     The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all his/her right, title and interest in and to all Developments and all related patents, patent applications, copyrights and copyright applications. However, this paragraph 2(b) shall not apply to Developments which do not relate to the present or planned business or research and development of the Company and which are made and conceived by the Employee not during normal working hours, not on the Company's premises and not using the Company's tools, devices, equipment or Proprietary Information. The Employee understands that, to the extent this Agreement shall be construed in accordance with the laws of any state which precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this paragraph 2(b) shall be interpreted not to apply to any invention which a court rules and/or the Company agrees falls within such classes. The Employee also hereby waives all claims to moral rights in any Developments.

(c)     The Employee agrees to cooperate fully with the Company, both during and after his/her employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments. The Employee shall sign all papers, including, without limitation, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights, and powers of attorney, which the Company may deem necessary or desirable in order to protect its rights and interests in any Development. The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as his/her agent and attorney-in-fact to execute any such papers on his/her behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Development, under the conditions described in this sentence.

3.     Company Property. The Employee agrees that, during the term of his employment, he shall not make, use or permit to be used any Company Property otherwise than for the benefit of the Company. The term "Company Property" shall include all notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, software code, data, computers, cellular telephones, pagers, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company property in his possession, custody or control. The Employee further agrees that he shall not, after the termination of his employment, use or permit others to use any such Company Property. The Employee acknowledges and agrees that all Company Property shall be and remain the sole and exclusive property of the Company. Immediately upon termination of his employment the Employee shall deliver all Company Property in his possession, and all copies thereof, to the Company.

4.     Non-Competition and Non-Solicitation. While the Employee is employed by the Company and for a period of one year after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:

(a)     Engage in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed, sold or

provided, or planned to be developed, manufactured, marketed, sold or provided, by the Company while the Employee was employed by the Company; or

(b)       Either alone or in association with others (i) solicit, or permit any organization directly or indirectly controlled by the Employee to solicit, any employee of the Company to leave the employ of the Company, or (ii) solicit for employment, hire or engage as an independent contractor, or permit any organization directly or indirectly controlled by the Employee to solicit for employment, hire or engage as an independent contractor, any person who was employed by the Company at the time of the termination or cessation of the Employee's employment with the Company; provided, that this clause (ii) shall not apply to any individual whose employment with the Company has been terminated for a period of six months or longer.

(c)       Either alone or in association with others, sell or attempt to sell to any person or entity that was, or to whom the Company had made or received a proposal to become, a customer or client of the Company at any time during the term of the Employee's employment with the Company, any products or services which are competitive with any products or services developed, manufactured, marketed, sold or provided by the Company.

5.       United States Government Obligations.

The Employee acknowledges that the Company from time to time may have agreements with other persons or with the United States Government, or agencies thereof, which impose obligations or restrictions on the Company regarding inventions made during the course of work under such agreements or regarding the confidential nature of such work. The Employee agrees to be bound by all such obligations and restrictions which are made known to the Employee and to take all action necessary to discharge the obligations of the Company under such agreements.

6.       Other Agreements.

The Employee hereby represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with the Company, to refrain from competing, directly or indirectly, with the business of such previous employer or any other party or to refrain from soliciting employees, customers or suppliers of such previous employer or other party. The Employee further represents that his/her performance of all the terms of this Agreement and the performance of his/her duties as an employee of the Company do not and will not breach any agreement with any prior employer or other party to which the Employee is a party (including without limitation any nondisclosure or non-competition agreement), and that the Employee will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

7.       No Employment Contract.

The Employee acknowledges that this Agreement does not constitute a contract of employment, does not imply that the Company will continue his/her employment for any period of time and does not change the at-will nature of his/her employment.

8.       The Employee represents and warrants that the knowledge, skills and abilities he possesses at the time of commencement of employment hereunder are sufficient to permit him, in the event of termination of his employment hereunder, to earn a livelihood satisfactory to himself without

violating any provision of Sections 1, 2, 3 or 4 hereof, for example, by using such knowledge, skills and abilities, or some of them, in the service of a non-competitor.

     9.     Miscellaneous.

     (a)     If any restriction set forth in Section 4 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

     (b)     The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

     (c)     This Agreement supersedes all prior agreements, written or oral, between the Employee and the Company relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company. The Employee agrees that any change or changes in his/her duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

     (d)     This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which, or into which, the Company may be merged or which may succeed to the Company's assets or business, provided, however, that the obligations of the Employee are personal shall not be assigned by him or her.

     (e)     No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

     (f)     The Employee expressly consents to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ the Employee may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

     (g)     The restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable for such purpose. The Employee agrees that any breach of this Agreement is likely to cause the Company substantial and irrevocable damage which is difficult to measure. Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies which may be available, shall have the right to obtain an injunction from a court restraining such a breach or threatened breach and the right to specific performance of the provisions of this Agreement and the Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

     (h)     This Agreement is governed by and will be construed as a sealed instrument under and in accordance with the laws of the Commonwealth of Massachusetts (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the Commonwealth of Massachusetts (or, if appropriate, a federal court located within Massachusetts), and the Company and the Employee each consents to the jurisdiction of such a court.

      (i)     This Agreement may be amended or modified only by a written instrument executed by both the Company and the Employee.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.


_____        Date:  03/14/2011_____
Indrajeet Thorat


_____        Date: _____
Kim Mark
Director, Human Resources
A123 Systems, Inc.

Exhibit F

**From:** Don Dafoe [mailto:dondafoe@comcast.net]
**Sent:** Thursday, January 8, 2015 8:07 PM
**To:** Ron Osenbaugh
**Cc:** Mujeeb Ijaz
**Subject:** Re: Your HireRight Background forms were successfully submitted!

Ron

FYI I just logged onto HireRight site using my username and PW.  The online profile states that there is nothing for me to do...

____


Don Dafoe <dondafoe@comcast.net> wrote:

Hi Ron
This was the last I received from Hireright.  Please check and forward whatever I need sign

Don

____

Exhibit G

## Engineering Program Manager, Battery Technology

- Job Number: 35992763
- Santa Clara Valley, California, United States
- Posted: Nov. 12, 2014
- Weekly Hours: 40.00

### Job Summary

As an Engineering Project Manager within Apple's Product Design organization, you will be responsible for managing the product definition and development process for our Battery Design and Integration teams. The position will support multiple product lines.

### Key Qualifications

- 5+ years of related technical background in Computer or Consumer Electronics preferred (not required)
- Excellent data presentation, communication, organizational and leadership skills
- Ability to filter and distill relevant information for the right audience
- Ability to rapidly understand new technologies
- Ability to comprehend, communicate and manage complex design tradeoffs
- Familiarity with computer architecture
- Self-motivated and proactive with demonstrated creative and critical thinking capabilities
- Remains flexible and calm in the face of ambiguity
- Knowledge of product development and manufacturing processes
- Understands and deals well with rapid development cycle

### Description

In this role you will drive the day-to-day activities to meet the overall program objectives, focusing on process within product definition and engineering design cycles. Key Responsibilities: • Identify cross-functional design dependencies and risks • Clearly define and document design tradeoffs • Develop project schedules • identify and engage cross-functional stakeholders for product definition decisions • Drive day-to-day activities to meet overall project objectives • Enable the development effort by creating and monitoring an efficient, stream-lined process • Identify and direct all resources required to execute successful projects • Facilitate communication and collaboration across engineering functions and operations • Offer multiple levels of status across a wide spectrum of individual contributors to executive management

### Education

BSME/BSEE degree or equivalent

Exhibit H

 A123 Systems LLC
39000 Seven Mile Rd
Livonia, MI 48152

December 22, 2014

**Via Federal Express**
Denise Young Smith
Vice President, Worldwide Human Resources
Apple, Inc.
1 Infinite Loop
Cupertino, CA 95014

Dear Ms. Smith:

I am writing to you in regards to Mujeeb Ijaz, a former employee at A123.  In his role as President of A123 Venture Technologies for A123, Mujeeb Ijaz has had access to A123's critical and confidential trade secrets and proprietary information ("Confidential Information") regarding our Lithium ion battery development and manufacturing.  Unfortunately, we have reason to believe that Mujeeb Ijaz is now employed with Apple Inc. in the battery development field and is in direct violation of his non-competition agreement that he signed with A123 Systems.

The purpose of this letter is to notify you that Mujeeb Ijaz has continuing obligations to A123 after his voluntary separation from A123 on June 27, 2014.  A123 believes that any disclosure, use or misappropriation of the Confidential Information by him or others (including your company) would result in unfair competition, as well as substantial detriment and irreparable damage to A123.

Please note that as a condition of his commencing employment with A123, Mujeeb Ijaz was asked to enter into an ***Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement*** (the "Agreement"), which Mujeeb Ijaz executed on February 18, 2008.  I have enclosed a copy of the Agreement for your ease of reference.

The Agreement requires, among other things, that Mujeeb Ijaz not, either directly or indirectly, for a period of one (1) year following the termination of his employment (a) engage in any business that is competitive with A123's business, (b) solicit, either directly or indirectly, any employee of A123 to leave A123's employ or (c) sell or attempt to sell to any customer or prospective customer of A123 during the term of his employment, products or services that are competitive with A123's products or services.

It is our understanding Don Dafoe, current A123 Systems R&D Vice President of Development Engineering, has accepted a position with Apple Inc. and will be commencing employment shortly after the first of the year.  This is in direct conflict with item "b" stated above.

The Agreement also requires that Mujeeb Ijaz will not, directly or indirectly, disclose any of A123's proprietary information to any third party or use such proprietary information for any purposes other than for A123's benefit and in connection with his employment duties at A123.  The Agreement remains in full force and effect and Mujeeb Ijaz continues to have binding contractual and fiduciary obligations to A123.

**A123 will be watching this situation with the utmost scrutiny and vigilance.  Please be advised, if A123 concludes that Mujeeb Ijaz's employment with Apple Inc. is in violation of the terms of the Agreement, A123 will take all appropriate actions to protect our business interests.** We expect that Mujeeb Ijaz and Apple Inc. will exercise the highest degree of due care, business integrity, and ethics, to comply with the continuing obligations

to A123.  To put Mujeeb Ijaz on specific notice regarding this correspondence between A123 and Apple Inc., we are providing Mujeeb Ijaz with a similar letter and a copy of the Agreement.

I look forward to discussing this with you further.  Please contact me at (734)772-0268.


Respectfully,


Jim Beining
Vice President, Human Resources


*Enclosure*


Cc:

Exhibit I