UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A123 SYSTEMS LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC., MUJEEB IJAZ, DON DAFOE, MICHAEL ERICKSON, DaPENG WANG and INDRAJEET THORAT<br><br>　　　　　　Defendants. | Civil Action No. 15-cv-10438-DPW<br><br>**Filed In Massachusetts Superior Court, Middlesex County, on 2/13/2015** |

**PLAINTIFF A123 SYSTEMS LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTIVE RELIEF, AND EXPEDITED DISCOVERY**

Plaintiff A123 Systems LLC ("*A123*"), by and through undersigned counsel, respectfully requests that the Court enter a temporary restraining order and preliminary injunction to stop defendant Mujeeb Ijaz from violating his Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement with A123  with A123 (the "*Agreement*"). Specifically, the Court is asked to enjoin defendant Ijaz from breaching the Agreement by improperly soliciting A123's employees, either directly or indirectly, on behalf of defendant Apple Inc. ("*Apple*"). A123 also requests that the Court similarly enjoin defendant Apple from tortiously interfering with A123's rights under the Agreement by encouraging, participating in, or supporting defendant Ijaz's breach of the Agreement through his solicitation activities and from otherwise improperly raiding A123's key personnel Lastly, A123 seeks an order permitting it to take discovery on an expedited basis as more fully set forth below.

As set forth herein and in A123's Verified Complaint, defendant Ijaz has breached his Agreement by, among other things, participating in the improper solicitation of at least one other defendant in this matter – Don Dafoe. Defendant Dafoe is a former employee of A123 who now works for Apple. Defendant Dafoe, too, is subject to an Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement. It is identical to defendant Ijaz's Agreement. Defendant Ijaz (on behalf of Apple) and Apple have solicited A123 personnel despite being fully aware of Mr. Ijaz's commitment to not solicit A123's employees and A123's rights under the Agreement. It appears that Apple, with the assistance of defendant Ijaz, is systematically hiring away A123's high tech PhD and engineering employees, thereby effectively shutting down various projects/programs at A123. They are doing so in an effort to support Apple's apparent plans to establish a battery division that is similar if not identical to A123's, in competition with A123, and despite actual knowledge that all of the individual defendants here (including Ijaz) are subject to Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements that prohibit them from, among things, working in a substantially similar field as they did at A123 for a reasonable period of one year. Irreparable harm will come to A123 if Apple, with the assistance of defendant Ijaz, is allowed to continue raiding A123's employees and tortiously interfering with A123's rights under its agreements with its employees.

## **FACTS**[1]

*The Individual Defendants' Employment with A123.*

Defendants Ijaz, Dafoe, Erickson, Wang, and Thorat (the "***Individual Defendants***") formerly worked in A123's System Venture Technologies division. Verified Complaint at ¶11. That division conducts research and development related to A123's lithium-ion battery

---

[1] All factual allegations made herein are supported by either the Verified Complaint or the Affidavit of Patrick Hurley dated February 12, 2015 (the "***Hurley Aff.***").

technology business. While employed at A123, the Individual Defendants were responsible for, among other things, developing and testing new battery technology and products and validating and testing existing battery technology and products. Id. at ¶12. Defendants Erickson, Wang, and Thorat are PhD scientists and while employed by A123 were each in charge of separate projects related to A123's business. Defendants Dafoe, Erickson, Wang, and Thorat reported directly to defendant Ijaz. Id. at ¶ 14. Defendant Ijaz was in charge of A123's Waltham, Massachusetts office and, therefore, acted as the head of A123's System Venture Technologies division. Id.

*The Individual Defendants' Exposure to A123's Confidential Information.*

The Individual Defendants were in constant contact with and utilized A123's confidential and proprietary information as part of their employment. In recognition of this, and as a prerequisite to their employment with A123, the Individual Defendants each executed an Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement for the benefit of A123. Id. at ¶15. The Individual Defendants' Non-Disclosure, Non-Competition and Non-Solicitation Agreements were intended to provide A123 with reasonable protections concerning its confidential and proprietary information and to otherwise protect A123's legitimate business interests. Specifically, the Individual Defendants (including defendant Ijaz) agreed that:

> all information, whether or not in writing, of a private, secret or confidential nature concerning the Company's [A123] business, business relationships or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. … [the Individual Defendants] will not disclose any Proprietary Information to any person or entity other than employees of the Company or use the same for any purposes (other than in the performance of [their] duties as an employee of the Company) without written approval by an officer of the Company, either during or after [their] employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by [the Individual Defendants].

Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶1.

The Individual Defendants further agreed to refrain from competing with A123 in its battery business for a reasonable time period following the termination of their employment. Specifically, they agreed that, for a period of one year after the termination of their employment with A123, they would not:

> Engage in any business or enterprise … that is competitive with the Company's business, including but not limited to any business or enterprise that develops, manufactures, markets, or sells any product or service that competes with any product or service developed, manufactured, marketed, sold or provided, or planned to be developed, manufactured, marketed, sold or provided, by the Company while the [Individual Defendants were] employed by the Company; or Either alone or in association with others, sell or attempt to sell to any person or entity that was, or to whom the Company had made or received a proposal to become, a customer or client of the Company at any time during the term of the [Individual Defendants'] employment with the Company, any products or services which are competitive with any products or services developed, manufactured, marketed, sold or provided by the Company.

Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶4(a), (c).

The Individual Defendants further agreed to refrain from soliciting A123's employees. Specifically, they agreed that, for a period of one year after the termination of their employment with A123, they would not:

> Either alone or in association with others (i) solicit, or permit any organization directly or indirectly controlled by the Employee to solicit, any employee of the Company to leave the employ of the Company, or (ii) solicit for employment, hire or engage as an independent contractor, or permit any organization directly or indirectly controlled by the Employee to solicit for employment, hire or engage as an independent contractor, any person who was employed by the Company at the time of the termination or cessation of the [Individual Defendants'] employment with the Company.

Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶4(b).

The non-solicitation provision of the Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements protects A123 against raids on its employee ranks, a particularly devastating activity for a company like A123 that invests time and money in maintaining its technical and management staff.

The Individual Defendants specifically acknowledged that all of the above-quoted restrictions on their post-employment activity were necessary for the protection of A123, that the breach of any of those restrictions would cause irreparable harm to A123, and that A123 would be entitled to an injunction restraining any such breach. Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement at ¶9(g).

***Apple's Entry into A123's Business and the Poaching of A123's Employees.***

Upon information and belief, Apple is currently developing a large scale battery division to compete in the very same field as A123. In connection with that development, beginning in or around June of 2014, defendant Apple embarked on an aggressive campaign to poach employees of A123 and to otherwise raid A123's business. To date, Apple has poached the five (5) Individual Defendants from A123. With the exception of defendant Ijaz, all of the Individual Defendants terminated their employment with A123 and began working for Apple within the last month. Verified Complaint at ¶¶23-27.

Upon information and belief, all of the Individual Defendants are working in a field of battery science, technology, and/or products that is substantially similar if not identical to the field they worked in at A123. A123's belief is informed by, among other things, defendant Ijaz's contact and solicitation of one of A123's external collaborators – SiNode Systems, on behalf of Apple. SiNode Systems, like A123, is in the business of researching, developing, and marketing lithium-ion battery technology. Defendant Ijaz worked with SiNode Systems on behalf of A123 in connection with its battery business. A123 has learned from SiNode Systems that defendant Ijaz solicited it on behalf of Apple. Verified Complaint at ¶¶36-41. Defendant Ijaz's solicitation of SiNode Systems confirms that his work on behalf of Apple is at least substantially similar (if not identical) to his work at A123. Indeed, there is every indication that Apple is trying to

replicate much of the management structure that existed at A123 while defendant Ijaz was still employed there – with defendants Dafoe, Erickson, Wang, and Thorat working as direct reports to defendant Ijaz.

*Defendant Ijaz Solicits A123 Employees in Direct Violation of his Agreement.*

The evidence uncovered by A123 to date indicates that defendant Ijaz has solicited one or more of the other Individual Defendants to leave their employment with A123 and begin working with Apple. A123's belief is informed by, among other things, defendant Ijaz being involved in defendant Dafoe's recruitment communications with Apple's agents. Id. at ¶¶28-29. Attached to the Verified Complaint as Exhibit F is an e-mail message from defendant Dafoe with Apple's hiring personnel in which defendant Ijaz is included. This e-mail confirms that defendant Ijaz either directly or indirectly solicited or was otherwise wrongfully involved in the hiring of defendant Dafoe in violation of his Agreement.

*Apple Disregards the Individual Defendants' Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements.*

On December 22, 2014, A123 notified Apple in writing of defendant Ijaz's Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement and A123's concerns that defendant Ijaz was violating that agreement by, among other things, soliciting employees and working in a similar if not identical field to the one he was involved in at A123. Verified Complaint at ¶44. A123 also expressed concerns that defendant Ijaz would inevitably disclose A123's Proprietary Information in connection with his employment with Apple. Also on December 22, 2014, A123 wrote to defendant Ijaz directly to remind him of his obligations under his Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreement and to request that he provide A123 with assurances that he has and will continue to adhere to that

agreement. Defendant Ijaz never responded or provided the requested assurances. Verified Complaint at ¶46.

Apple responded to A123's correspondence in writing on January 12, 2015, but failed to provide any assurance that defendant Ijaz has not and will not disclose or utilize A123's Proprietary Information, improperly solicit A123 employees, or improperly compete with A123. Id. at ¶47. A123 responded by letter dated January 16, 2015 reiterating its concerns to Apple and its belief that defendant Ijaz and defendant Dafoe were violating their Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements. Id. at ¶48. A123 also advised Apple that its continued employment of former A123 employees may constitute, among other things, unlawful interference with A123's contractual rights under the Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements. A123 demanded that Apple advise it as to what defendants Ijaz and Dafoe were working on at Apple and whether or not said work was similar to the work they performed on behalf of A123. Apple eventually responded by letter dated February 6, 2015, but failed to offer assurances to A123 that defendant Ijaz had not been involved in solicitations on behalf of Apple, and more fundamentally refused to identify the type of work that the Individual Defendants were engaged in at Apple or to even acknowledge the non-competition covenants in those individuals' Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements.

The evidence to date demonstrates that Apple has openly disregarded A123's concerns and its rights under the Individual Defendants' Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements by continuing to employ defendants Ijaz and Dafoe. Furthermore, A123 believes that following A123's contact with Apple, Apple further disregarded A123's rights by hiring defendants Erickson, Wang, and Thorat, despite knowledge of these defendants'

Non-Disclosure, Non-Competition and Non-Solicitation Agreements. The departure of defendant Ijaz left A123 without a leader at its System Venture Technologies division in Waltham, Massachusetts. Moreover, in the wake of defendants Erickson, Wang, and Thorat's departures to Apple, the projects that each was individually and principally responsible for at A123 have been effectively shut down for lack of PhD employees to replace these defendants. Hurley Aff. at ¶¶10-12.

***The Defendants' Actions Have Caused Irreparable Harm and Robbed A123 of its Investment in its Employees.***

A123 highly values its engineers (such as defendants Ijaz and Dafoe), scientists (such as defendants Erickson, Wang, and Throat), and technical managers (such as defendant Ijaz) because of the specialized nature of the product it develops and manufactures. Such employees have received on-the-job training at A123 and similar investment by A123. Id. at ¶5. For example, A123's employees are highly compensated. Defendant Dafoe was earning over $220,000.00 in base salary in his last year with A123, together with a bonus in excess of $110,000.00. Id. at ¶6. Defendant Ijaz's last base salary was over $294,000.00, and he earned a bonus in the same amount in 2014. Id. at ¶7. Additionally, defendant Ijaz was paid a monthly living expenses stipend in the amount of $5,000.00. Further, A123 often pays significant relocation costs in order to secure the very best talent available. For example, A123 paid defendant Ijaz approximately $35,000.00, defendant Erickson $28,000.00, defendant Wang over $15,000.00, and defendant Thorat over $12,000.00 in relocation costs. Id. at ¶8.

A123's technical employees' skills – including the skills of the Individual Defendants – are not readily replaceable in the employment marketplace. Again, the Individual Defendants are all either PhD scientists or engineers. Hurley Aff. at ¶9. In the wake of defendants Erickson, Wang, and Thorat's departures, the projects that each was individually and principally

responsible for have been effectively shut down for lack of PhD employees to replace these defendants. Id. at ¶ 12.

Furthermore, the departure of the Individual Defendants means that A123 has lost the substantial investment it made in each of these employees, and is now forced to scramble to find replacements at substantial cost to A123. To date, A123 has not been able to replace defendants Dafoe, Erickson, Wang, and Thorat. The loss of senior PhD's, engineers, and management is a serious loss to A123 of the expertise, skill and knowledge in which it has invested and which it has relied upon for both current and future product development. Id. at ¶¶10-11.

Finally, given that the departures of the Individual Defendants has effectively shut down projects at A123 for lack of personnel and forced A123 to scramble to try and find replacements and to otherwise minimize the damage done to its business, employee morale is very low in A123's System Venture Technologies division. A123 believes that this may lead to a "snowball" effect and additional departures will occur, further damaging the business. Id. at ¶12.

## ARGUMENT

The Court should enter a temporary restraining order and preliminary injunction against defendants Ijaz and Apple because: (1) A123 is likely to succeed success on the merits of its relevant claims; (2) A123 will suffer irreparable harm in the absence of an injunction; (3) such harm outweighs any harm that defendants Ijaz and Apple would suffer if the injunction were granted; and, (4) the public interest will not be adversely affected by issuing the injunction. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616, 405 N.E. 2d 106 (1980).

**I.   A123 Is Likely to Prevail on the Merits of Its Breach of Contract Claim Against Defendant Ijaz.**

To prove a breach of contract claim, a plaintiff must show (1) the existence of a valid and binding contract, (2) that the defendant breached the terms of the contract, and (3) that the

plaintiff suffered damage. *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995) (applying Massachusetts law). Here, Ijaz entered into a valid and binding contract with A123 containing an enforceable non-solicitation covenant. As demonstrated by his involvement with Apple's recruitment of defendant Dafoe, defendant Ijaz clearly has violated that covenant. A123 has suffered and will continue to suffer irreparable harm as a result of defendant Ijaz's breach of the Agreement. Accordingly, A123 has demonstrated that it is likely to prevail on its breach of contract claim against defendant Ijaz.

### A. The Agreement Is Valid and Enforceable.

In Massachusetts, where a high-tech company has shown that it makes substantial investment in its employees, enforcement of non-solicitation or "anti-raiding" covenants is routine. For example, in <u>Thomas Financial Networks, Inc. v. Norton et. al.</u>, No. 89-6492 (Mass. Super. Ct. 1989) (Botsford, J.), the court issued a preliminary injunction based upon a finding that it was likely that plaintiff would succeed on its claim for breach of the employment agreement into which the defendants, ex-employees of the plaintiff, had entered. <u>See</u> <u>Thomas Financial Networks</u>, slip. op. at 8-9 (citing <u>Marine Contractors Co. v. Hurley</u>, 365 Mass. 280, 310 N.E. 2d 915 (1974) and <u>New England Patriots Football Club, Inc.</u> <u>v. University of Colorado</u>, 592 F.2d 1196 (1st Cir. 1979)). That agreement prohibited the defendants from "soliciting or hiring any employee of [plaintiff company] or any consultant then under contract with [plaintiff company]" for a year following their termination. <u>See id.</u>, slip. op. at 2. Concluding that an employment agreement did in fact exist between defendant-employees and plaintiff-company, the court went on to determine that the non-solicitation clause of that agreement was enforceable:

> The non-solicitation agreement is not a restraint on trade in the same manner as a non-compete agreement, and thus is not subject to the same type of scrutiny as the latter. *If the non-solicitation provision is reasonable and protects the legitimate interest of the employer, it will be enforced*. The apparent purpose of the provision

> … is *to protect [plaintiff company] against raiding of its highly and specially trained employees* …, whose skills, knowledge and expertise may have taken a significant amount of time with the company to develop. This is a legitimate goal for a company operating in a very sensitive and technologically sophisticated field …, and the length of the restriction … appears to be reasonable. Id. at 8-9 (emphasis added).

In a subsequent case, Cambridge Technology Partners v. Sims et. al., No. 00-1687 (Mass. Super. Ct. 2000) (Kern, J.), the court issued a preliminary injunction enforcing the non-hire and non-solicitation clauses in employment contracts between defendant-employees and plaintiff-company. The contract at issue there, like the one cited above in Thomas Financial Networks, Inc. and the one at issue in the present case, required that a former employee "will not hire or assist in hiring any employees of [plaintiff company] and will not encourage any employee to leave [plaintiff company's] employment." Id., slip. op. at 7. Upon a determination that the plaintiff was likely to succeed on its breach of contract claim, and that plaintiff's "risk of harm, *i.e.*, losing its best employees -- is substantial and well founded," the court enjoined the defendants "for two (2) years from his or her respective date of termination with [plaintiff company] from hiring or soliciting or assisting in hiring any [plaintiff company] employee." Id. at 8. Notably, the court issued this order even though it found that the rival employer had not been shown to be a competitor.

A123's situation falls squarely within the above cited precedent. The anti-raiding language in defendant Ijaz's Agreement (and the other Individual Defendants' Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements) is similar to the contractual language in these cases. Like the plaintiffs in Thomas Financial Networks and Cambridge Technology Partners, A123 is a high-tech company that invests substantial resources in the hiring and training of its employees. Therefore, as in those cases, A123 is entitled to an order enjoining defendant Ijaz from conducting or participating in improper solicitations and raiding of

A123 employees. See Modis, Inc. v. Revolution Corp., 1999 Mass. Super. LEXIS 542 (Mass. Super. Ct. 1999)(enforcing one year anti-raiding restriction and noting that such provisions are reasonable even where doubled in duration); Zona v. McKinnon, 28 Mass. L. Rep. 233 (Mass. Super. Ct. 2011) (enforcing one-year non-solicitation agreement).

Similarly, where, as here, there is evidence supporting the allegations that the defendant has violated his non-solicitation/anti-raiding covenant by encouraging, directly or indirectly, other high level employees to join him at his new employer, A123 has a likelihood of prevailing on its claim. See Hilb, Rogal & Hobbs v. Kinloch Partners, Inc. et al., No. 07-5549-BLS2 (Mass. Super. Ct. 2007) (granting injunction concerning anti-raiding covenant where former employee was indirectly involved in hiring efforts by allowing new employer to use his name and business plans to induce employees from former employer); State St. Corp. v. Barr, 1999 Mass. Super. LEXIS 432 (Mass. Super. Ct. 1999)(granting injunction concerning anti-raiding covenant where former employee was indirectly involved with recruiter's efforts to hire away plaintiff's personnel).

It should be noted that the "anti-raiding" line of cases is distinguishable from the more common cases involving the enforcement of covenants not to solicit *clients and business* of a former employer or not to work for a competitor.  Those more commonly litigated "non-compete" agreements are subject to a higher threshold test than "anti-raiding" covenants because they may restrain trade in a manner that impermissibly prevents ordinary competition in the marketplace.  See, e.g., Insight Global LLC v. Signature Consultants LLC, No. 2012-4556-BLSI (2013); Modis, Inc. v. Revolution Group, Ltd., 1999 WL 1441918, at *5 (Mass. Super. Ct. 1999). Although, even non-compete agreements, of course, are routinely enforced by Massachusetts

courts in appropriate circumstances.[2] In contrast, the relief requested by A123 raises no such anti-competitive concerns in that it does not seek to restrain defendant Ijaz's work activities (or Apple's business activities) in any manner.

In sum, A123 has a legitimate business interest in protecting its employee base from the raiding activities conducted by defendant Ijaz in breach of his Agreement, which is valid and enforceable under Massachusetts law.

### B. Ijaz Has Violated his Agreement.

The Agreement precludes Ijaz from being involved, directly or indirectly, in the solicitation of A123's employees for a period of one year following his termination. Defendant Ijaz ceased working with A123 and began working for Apple in June of 2014. As demonstrated, less than a year later (January 2015), he was involved in hire of defendant Dafoe (at least) by Apple. This is a clear violation of the non-solicitation obligations of his Agreement.

### C. A123 Will Suffer Damages as a Result of Ijaz's Breach.

As explained more fully below in connection with A123's demonstration of irreparable harm and by Mr. Hurley in his affidavit, the departure of defendant Ijaz and his wrongful solicitation of A123's employees have caused considerable damage to A123. This includes, but is not limited to, the loss of a substantial monetary investment in the Individual Defendants, the effective termination of projects that they were in charge of on behalf of A123, and decreased employee morale.

For the foregoing reasons, A123 has demonstrated a likelihood of success on the merits of its claim that defendant Ijaz has breached his Agreement with A123.

---

[2] See id. at *9.  See also Marcam Solutions Inc. v. Sweeney, No. 98-1142, 1998 WL 1284184, at *2 (Mass. Super. Ct. 1998)(Neel, J.); Bowne of Boston v. Levine and Merrill Co., No. 97-5789, 1997 WL 781444 (Mass. Super. Ct. 1997)(Burnes, J.).

**II.** **A123 Is Likely to Prevail on the Merits of Its Tortious Interference Claims Against Defendants Ijaz and Apple.**

It is clear that defendant Ijaz (on behalf of Apple) and Apple have taken and continue to take some of the most highly qualified and experienced employees from A123 and install them in Apple's battery division, which A123 believes is intended to be in direct competition with A123. Both defendants Ijaz and Apple were fully aware of A123's non-solicitation covenants with its employees, and yet they actively disregard that covenant by allowing defendant Ijaz to participate in Apple's recruitment of A123 employees. In so doing, defendants Ijaz and Apple are acting tortiously, stealing the fruits of A123's investment in its competitive and sophisticated workforce through the improper means of breaches of non-solicitation agreements. See United Truck Leasing Co., v. Geltman, 406 Mass. 811, 812-813, 551 N.E. 2d 20 (1990) (regarding elements of tortious interference with contract).  This creates liability for defendants Ijaz and Apple for tortious interference with contractual relations. Since A123 is likely to prevail on its claims against defendants Ijaz and Apple, both should be enjoined from further recruitment activity at A123 that violates Ijaz's Agreement the Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements A123 has with its employees.

**III.** **A123 Will Suffer Irreparable Harm If an Injunction Is Not Granted.**

The damage done to A123 as a result of defendant Ijaz's direct breach of his non-solicitation obligations and both his and Apple's tortious interference with A123's rights under its Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements with its employees is considerable. The departures of the Individual Defendants has caused the effective shutdown of the A123 projects that each was individually and principally responsible for due to the lack of PhD employees to replace these defendants. Hurley Aff. at ¶12. Furthermore, the departure of the Individual Defendants means that A123 has lost the substantial investment it

made in each of these employees, and is now forced to scramble to find replacements at substantial cost to A123. Id. at ¶¶10-11.

Further wrongful raiding of A123's employees – including high-level scientists and engineers like the Individual Defendants – will only increase the significant damage done to A123 thus far. A123 has presented sufficient evidence that the drain of expertise at A123 could reach a "critical mass," which will cause such damage that A123 will have no adequate remedy at law.  See Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710, 550 N.E. 2d 1361 (1990).  For theses reason, injunctive relief is necessary.

### IV.     The Balance of Hardship Tips Decidedly in Favor of A123.

Balancing the hardships is straightforward in this case.  A123 has demonstrated that it will suffer irreparable harm if injunctive relief is not granted and Ijaz is not required to comply with his contractual obligations and both defendants Ijaz and Apple are free to continue to wrongfully raid A123's employees and disregard A123's Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements.  On the other hand, neither of these defendants can prove that issuance of an injunction enforcing Ijaz's Agreement and preventing further wrongful interference with A123's contractual relations will cause them any harm. A123 does not intend to prevent Ijaz from making a living or Apple from conducting its business.  A123 is not at this time seeking to enforce a non-compete, simply a reasonable non-solicitation covenant.[3]  Thus, the balance of harms requires that the Court grant the requested preliminary injunction.  *See George Guertin Trophy, Inc. v. Guertin Graphics, Inc.,* No. 071610A, 2007

---

[3] A123 may subsequently move the Court for broader injunctive relief depending on what is uncovered in discovery. As explained in the Verified Complaint, A123 has legitimate concerns that the Individual Defendants are violating the non-disclosure and non-competition covenants in their Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements. These concerns prompt A123 to seek expedited discovery. Pending that discovery, A123 respectfully requests the narrow injunctive relief requested herein.

Mass. Super. LEXIS 511 at *5 (Mass. Super. Ct. 2007) (granting a preliminary injunction after "balanc[ing] the potential harm faced by the moving party compared to the harm that the preliminary injunction would inflict on the nonmoving party") (citing *Packaging Industries Group. Inc. v. Cheney,* 380 Mass. 609, 616-17 (1980).

**V.     The Relief Requested By A123 is Consistent With the Public Interest.**

No serious public policy is implicated in the granting of a preliminary injunction in this case. A123 is only asking that defendants be restricted in their illegal solicitation activities and that they recognize and adhere to A123's rights under its Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements. Enforcing contracts and restricting the raiding capabilities of defendants like Ijaz and Apple is good public policy. A temporary restraining order and preliminary injunction in this case will uphold the security and enforceability of A123's freely bargained-for contracts. See Shipley Co., 926 F. Supp. 28, 30 (D. Mass. 1996).

**VI.    A123 is Entitled to Expedited Discovery.**

A123's application only seeks to narrowly enjoin defendants Ijaz and Apple with respect to the non-solicitation covenants in A123's Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements. However, as explained in the Verified Complaint, A123 suspects that the Individual Defendants are also improperly competing with A123 and/or will inevitably disclose A123's proprietary information in connection with their work at Apple, and that Apple, being aware of the restrictions on such in these defendants' Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements, may be liable to A123. To date, Apple has failed and refused to inform A123 as to precisely what the Individual Defendants are working on at Apple. In light of the foregoing, A123 respectfully submits that it is entitled to conduct expedited discovery in advance of the hearing on its application for preliminary injunctive relief, and asks that the Court grant A123 the same. Acordia Northeast, Inc. v. Academic Risk Res. & Ins., LLC,

2005 Mass. Super. LEXIS 130 (Mass. Super. Ct. 2005)(allowing expedited discovery for party to seek evidence to substantiate claims in restrictive covenant dispute); Juan v. La Rosa Del Monte Express, LLC, 2005 Mass. Super. LEXIS 535 (Mass. Super. 2005)(allowing employer's request for expedited discovery to enable employer to "determine how and whether to seek interlocutory relief against what it believes are violations of [plaintiff employee's] agreement"). Specifically, A123 seeks discovery concerning the following subjects in advance of any hearing:

1. The Individual Defendants' employment at Apple, including job responsibilities, and the execution and consideration for any agreements between the Individual Defendants' and Apple and/or its agents;

2. Documents or information in the possession of any defendant to this action concerning the employment of the Individual Defendants with both A123 and Apple;

3. Apple's knowledge of, review of, and reaction to the Individual Defendants' Invention, Non-Disclosure, Non-Competition and Non-Solicitation Agreements;

4. Apple's efforts over the last year to recruit individuals similar to the Individual Defendants to work in the same area at Apple that the Individual Defendants work in;

5. Apple's current involvement with, and business plan concerning, the research and development of the battery technology that the Individual Defendants are involved with at Apple;

A123 also seeks leave to serve Defendants with additional requests for discovery, including interrogatories and document demands, and an order that Defendants must respond to all such demands within ten (10) days of the Court's grant of the request for expedited discovery. A123 further requests that the Court permit it to depose the Individual Defendants and the appropriate

designee(s) of Apple, pursuant to Mass. R. Civ. P. 30(b)(6), with the most knowledge concerning the foregoing with fourteen (14) days of A123's receipt of Defendants' discovery responses.

## CONCLUSION

For the foregoing reasons, A123 respectfully requests that the Court enjoin defendant Ijaz from breaching his Agreement by improperly soliciting A123's employees, either directly or indirectly, on behalf of defendant Apple. A123 also requests that the Court enjoin defendant Apple from tortiously interfering with A123's rights under the Agreement by encouraging, participating in, or supporting defendant Ijaz's breach of the Agreement through his solicitation activities and from otherwise improperly raiding A123's key personnel. A123 also requests that the Court allow the expedited discovery detailed herein.

**A123 SYSTEMS LLC**

By its attorneys,

/s/ *Lyndsey M. Kruzer*
Michael L. Rosen (BBO No. 559954)
mrosen@foleyhoag.com
Lyndsey M. Kruzer (BBO No. 675797)
lkruzer@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
Tel:  617.832.1000
Fax: 617.832.7000

/s/ *Robert S. Gilmore*
Robert S. Gilmore
(*to be admitted pro hac vice*)
rsg@kjk.com
Robert J. Bowes
(*to be admitted pro hac vice*)
rjb@kjk.com
Kohrman Jackson & Krantz P.L.L.
20th Floor, One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114
216-696-8700

**Certificate of Service**

I, Lyndsey M. Kruzer, certify that on February 18, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing, and via first class mail to the following unregistered participants:

Mujeeb Ijaz
6300 Rue Du Lac
West Bloomfield, MI 48325

Don Dafoe
1623 Ewald Ave.
Marlborough, MA 01752

Dapeng Wang
13 Judith Lane Apt 10.,
Marlborough, MA 02452

Indrajeet Thorat
448 Old Connecticut Path  #2
Framingham, MA 01701

Michael Erickson
655 Colleen Drive
San Jose, CA 95123

*/s/ Lyndsey M. Kruzer*